IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHIRLEY A. PHILLIPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 06 C 3747 |
| v. ) | |
| ) | Suzanne B. Conlon, Judge |
| JP MORGAN CHASE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Shirley A. Phillips sues her former employer JP Morgan Chase, alleging violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-54. Phillips contends JP Morgan interfered with her FMLA rights and retaliated against her for taking medical leave. JP Morgan moves for summary judgment. For the reasons set forth below, the motion is granted.

## BACKGROUND

### I.    Local Rule 56.1

JP Morgan filed a statement of material facts pursuant to Local Rule 56.1(a)(3). Dkt. No. 21 (Feb. 20, 2007). Phillips admitted most of the material facts. Dkt. No. 33 (Apr. 3, 2007). She did not respond to statement of fact number 54. Her remaining responses failed to controvert the relevant statement of material fact, were unresponsive, or failed to comply with the Local Rules. L.R. 56.1(b)(3)(B). She did not submit a statement of additional facts. L.R. 56.1(b)(3)(C). The court deems admitted all material facts set forth in JP Morgan's Rule 56.1(a)(3) statement. L.R. 56.1(b)(3)(C); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Phillips' failure to comply with Rule 56.1 does not result in automatic summary judgement; the court must still evaluate the facts in the light most favorable to her. *Id.*

## II. Facts

Phillips was hired by JP Morgan on January 3, 2005. Def.'s Facts at ¶ 6. She performed data entry work on the third shift, from 10:30 p.m. to 6:45 a.m., Sunday through Friday. *Id.* at ¶¶ 8-9, 13. She was aware of JP Morgan's FMLA policy. *Id.* at ¶ 59. She also received JP Morgan's standards and policy for attendance and lateness. *Id.* at ¶ 11. The standards provided that employees must contact their supervisor directly before taking any unscheduled absence. *Id.* Leaving a voicemail was not acceptable. *Id.* The policy provided that an employee who was absent for three consecutive workdays without notifying her supervisor "may be terminated for job abandonment." *Id.*

Phillips' supervisor was Barbara Acosta. Def.'s Facts at ¶ 10. Shortly before the end of Phillips' shift on Monday, May 1, 2006, she received a written performance warning from Acosta. *Id.* at ¶ 15. The warning stated that if Phillips was not able to improve the quality of her work she could be terminated. *Id.* at ¶ 16. Phillips disagreed with the warning and refused to sign it. *Id.* at ¶ 17.

That evening, May 1, 2006 at 9:06 p.m., Phillips telephoned to notify her supervisor that she was ill and would not report to work. Def.'s Facts at ¶ 19. She spoke with Erlinda Tumang, the second shift supervisor, who relayed the information to Acosta. *Id.* Acosta recorded Phillips' May 1st absence as an unscheduled sick day. *Id.* Phillips attempted to contact Acosta directly by telephone later in the week. *Id.* at ¶¶ 21, 24. She left voicemail messages for Acosta on May 2nd and May 4th, indicating that she was ill and would not report for work, and requesting that Acosta return her call. *Id.* at ¶¶ 21-24. Acosta never received these or any other messages from Phillips, and did not return her call. *Id.* at ¶ 25. In her messages for Acosta, Phillips did not describe her

2

symptoms or disclose she was suffering from depression; she just explained that she was "ill." *Id.* at ¶ 26.

Not hearing from Phillips for three consecutive shifts, on May 5, 2006 Acosta submitted a recommendation that she be terminated for job abandonment. Def.'s Facts at ¶ 27. On May 7, 2006, Phillips reported for work. *Id.* at ¶ 30. Acosta informed her that she had been terminated for failing to report or call in for three consecutive shifts. *Id.* at ¶ 31. Phillips responded that she had called in and left messages, and asked Acosta to check her voicemail. *Id.* Acosta replied that she had checked her voicemail and had no messages. *Id.* Phillips stated she had proof that she had called in, but she did not provide it. *Id.* She did not describe her symptoms to Acosta at that time, but just stated she was ill. *Id.* She was terminated effective May 5, 2006. *Id.* at ¶ 32. After she was terminated, Phillips contacted Thomas Bergthold, a manager responsible for her group. *Id.* at ¶ 33. Bergthold asked Phillips to bring in proof that she had reported her absences to Acosta. *Id.* at ¶¶ 35-36. She never did so. *Id.* at ¶ 38.

Phillips was unable to report to work at JP Morgan from May 1-4, 2006 due to depression. Def.'s Facts at ¶ 50. She suffered from crying spells, nervous stomach, insomnia and severe headaches. *Id.* at ¶ 51. Her symptoms began the morning of May 1, 2006, when she left JP Morgan after meeting with Acosta. *Id.* at ¶ 65. She did not seek treatment until May 15, 2006, when she received a doctor's note excusing her from work during the period of May 1-4, 2006. *Id.* at ¶¶ 53-55. Phillips did not provide the doctor's note to anyone at JP Morgan. *Id.* at ¶ 57. She never requested FMLA leave from JP Morgan. *Id.* at ¶ 61. She did not exhibit symptoms of depression while working at JP Morgan, nor did she report her symptoms to anyone there. *Id.* at ¶ 63. She told her therapist her depression resulted from her termination from JP Morgan, which occurred after her

3

absences. *Id.* at ¶ 67 (she was terminated on May 7, 2006, although she may have known she would be terminated as early as May 5, 2006).

During her absence from JP Morgan, Phillips worked five eight-hour shifts (May 1-5, 2006, 7:00 a.m. to 3:00 p.m.) at the Chicago Sun-Times on assignment from a temporary employment agency. Def.'s Facts at ¶¶ 40-41. She did not disclose her temporary employment to JP Morgan. *Id.* at ¶ 42. She performed the same type of data entry duties at the Sun-Times, but earned slightly more per hour. *Id.* at ¶¶ 46, 49. She experienced symptoms of depression while working at the Sun-Times, but no one at the Sun-Times or the temporary employment agency witnessed her symptoms. *Id.* at ¶¶ 47-48.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). JP Morgan has the initial burden of demonstrating it is entitled to summary judgment. *Continental Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). If JP Morgan meets its burden, Phillips must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. *Id.*; FED. R. CIV. P. 56(e). Phillips' failure to comply with Local Rule 56.1 does not result in automatic judgment. *Raymond*, 442 F.3d at 608. The burden of persuasion remains with JP Morgan to show it is entitled to judgment as a matter of law. *Id.*

## II. The Family and Medical Leave Act

The FMLA guarantees eligible employees 12 weeks unpaid leave per year for various reasons, including serious health conditions rendering the employee unable to perform her job. 26 U.S.C. § 2612(a)(1)(D). It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the statute. 26 U.S.C. § 2615(a)(1); *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001). Aggrieved employees may sue under theories of discrimination/retaliation or interference/entitlement. *Kauffman v. Federal Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). "[T]he difference is that the first type of claim requires proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee his or her entitlements under the Act." *Id.* Phillips' complaint alleges both interference and retaliation claims.

### A. Interference Claim

Phillips claims JP Morgan interfered with her entitlement to FMLA leave. To prevail, Phillips must show that JP Morgan deprived her of an FMLA entitlement. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). A finding of ill intent by JP Morgan is not necessary. *Id.* Phillips must establish that (1) she was eligible for the FMLA's protections; (2) JP Morgan was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) JP Morgan denied FMLA benefits. *Id.* JP Morgan concedes Phillips can establish the first and second requirements, but argues she cannot establish the third and fourth. With respect to the fifth requirement, JP Morgan argues that because she cannot establish FMLA entitlement and sufficient notice, she cannot establish that JP Morgan denied benefits to which she was entitled.

5

### 1. Serious Health Condition

JP Morgan argues that Phillips was not entitled to FMLA leave because she did not have a serious health condition. Phillips contends her depression constitutes a serious health condition. The FMLA provides that an employee is entitled to leave under the statute for a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

It is undisputed Phillips did not receive inpatient care. Therefore, she must establish that her condition involves continuing treatment by a healthcare provider. 29 U.S.C. § 2611(11). Regulations implementing the FMLA provide that a serious health condition involving continuing treatment includes a "period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days." 29 C.F.R. § 825.114(a)(2)(i). A serious health condition involving continuing treatment also includes any "period of incapacity or treatment for such incapacity due to a chronic serious health condition" that requires periodic treatment visits, continues over an extended period of time, and may cause episodic incapacity. 29 C.F.R. § 825.114(a)(2)(iii).

Whether an illness or injury is a "serious health condition" under the FMLA is a legal question. *Haefling v. United Parcel Svc.*, 169 F.3d 494, 499 (7th Cir. 1999) (employee may not defeat summary judgment merely by alleging her condition is serious). JP Morgan argues Phillips

cannot establish a serious health condition because during her absence, she worked five eight-hour shifts at the Sun-Times doing the same type of work. Therefore, she cannot demonstrate a "period of incapacity" during which she was unable to work or perform other regular daily activities due to her depression. 29 C.F.R. § 825.114(a)(2)(i). Phillips argues her job duties at the Sun-Times were different because they did not require "99.5% accuracy." She contends that by taking time off from JP Morgan, she was attempting to reduce her stress level while seeking medical treatment.

Depression may be a serious health condition under the FMLA. *Collins v. NTN-Bower, Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001). However, Phillips' argument that her symptoms of depression constituted a serious health condition is unsupported by the record. It is undisputed she worked during her medical leave, and she fails to set forth any facts showing she was unable to perform other regular daily activities. She fails to cite any record evidence showing that her work at the Sun-Times was different from her work at JP Morgan, and did not require 99.5% accuracy. She did not seek treatment during her medical leave. She did not see a doctor until May 15, 2006, after her termination from JP Morgan. Phillips fails to set forth facts showing that she experienced a period of incapacity or received treatment for incapacity. 29 C.F.R. § 825.114(a)(2). Consequently, she fails to raise a genuine issue for trial on her entitlement to FMLA leave.

### 2. Notice

Even if Phillips could establish she suffered from a serious health condition, she cannot defeat summary judgment because she fails to raise an issue of fact regarding whether she provided notice to JP Morgan. The FMLA's notice requirements are not onerous. *Burnett*, 472 F.3d at 478. An employee must give notice of the need for FMLA leave 30 days in advance or "as soon as practicable under the facts and circumstances of the particular case." 29 U.S.C. § 2612(e)(2)(B); 29

7

C.F.R. § 825.303(a); *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 952 (7th Cir. 2004). If the need for FMLA leave is not foreseeable, it is expected that an employee will give notice "within no more than one or two working days of learning of the need for leave." 29 C.F.R. § 825.303(a).

An employee need not mention the FMLA in her leave request. *Burnett*, 472 F.3d at 478. The employee need only show that she "*likely* has an FMLA-qualifying condition." *Id.* at 479 (emphasis in original). Her duty is to place her employer on notice of a probable basis for FMLA leave. *Aubuchon*, 359 F.3d at 953. That is enough to trigger the employer's duty to request additional information from the employee's doctor to confirm her entitlement. *Id.* The adequacy of notice is a fact-based question. *Burnett*, 472 F.3d at 479. Absent unusual circumstances, "an employee's bare assertion that he is 'sick' is insufficient." *Id.*

JP Morgan argues that Phillips failed to provide adequate notice of her need for FMLA leave. She never requested FMLA leave, never told anyone of her symptoms, and never provided JP Morgan a copy of her doctor's note. JP Morgan argues her voicemail messages for Acosta were insufficient notice because they stated only that she was "ill." Phillips does not dispute that she never described her symptoms and stated only that she was ill. She argues that stating that she was ill was sufficient to provide notice, and the burden was on JP Morgan to request further information to determine whether she was entitled to FMLA leave.

Phillips' messages to Acosta were insufficient notice under the FMLA. Absent unusual circumstances, an assertion that one is sick does not provide adequate notice. *Burnett*, 472 F.3d at 479; *see also Collins*, 272 F.3d at 1008-09 (a reference to being sick does not imply a serious health condition or suggest that the FMLA might be applicable); *Phillips v. Quebecor World Rai Inc.*, 450 F.3d 308, 311-12 (7th Cir. 2006) (same). JP Morgan has a duty to investigate an employee's

8

entitlement to FMLA leave, but Phillips' statements that she was ill and would not report for work were insufficient to trigger this duty. *Phillips*, 450 F.3d at 312 (employers need not determine whether leave is covered by the FMLA every time an employee is absent due to sickness); *see also Aubuchon*, 359 F.3d at 953 (such a rule would "place a substantial and largely wasted burden on employers"). As a matter of law, the information Phillips conveyed to JP Morgan did not require further inquiry. *Phillips*, 450 F.3d at 312.

Phillips argues she was excused from the notice requirement because her depression affected her ability to advise JP Morgan of her need to take leave. An employee is excused from expressing a need for medical leave when the circumstances provide the employer with sufficient notice, or when the employee is incapable of providing notice. *Burnett*, 472 F.3d at 479. Observable changes such as a broken arm or a dramatic change in behavior present an obvious need for medical leave. *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003). This exception is inapplicable to Phillips because she did not develop her symptoms until after she left work on the morning of May 1, 2006. Therefore, no one at JP Morgan could have observed an obvious need for medical leave.

An employee may be excused from providing notice if her medical condition prevents her from communicating the nature of her illness and need for medical leave. *Byrne*, 328 F.3d at 382. This exception is also inapplicable. Phillips was able to communicate. She spoke with Tumang and left voicemail messages for Acosta during her absence. She met with Acosta on May 7, 2006. She contacted Bergthold to contest her termination. At no time did she describe her symptoms or claim she was suffering from depression. Phillips fails to set forth any facts showing her depression prevented her from communicating her need for medical leave. *Id.* (employee suffering from major depression who behaved erratically, slept during work shifts, and became suspicious of other people

was powerless to effectively communicate his condition). A reasonable jury could not conclude that Phillips provided adequate notice or was excused from doing so. Summary judgment is appropriate on her FMLA interference claim.

## B. Retaliation Claim

Phillips claims she was terminated in retaliation for taking medical leave allowed by the FMLA. In addition to proscribing interference with employees' substantive rights, the FMLA prohibits employers from "discriminating against employees . . . who have used FMLA leave." 29 C.F.R. § 825.220(c); *see also* 29 U.S.C. § 2615(b); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). FMLA retaliation claims are evaluated similarly to other employment discrimination statues. *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). Phillips may either offer direct evidence of JP Morgan's discrimination, or she may proceed under the indirect burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Phillips proceeds under the direct method of proof.

Phillips must present evidence that JP Morgan terminated her on account of her protected activity. *Burnett*, 472 F.3d at 481. If her evidence is contradicted, the case must be tried unless JP Morgan presents unrebutted evidence that it would have terminated her even without a retaliatory motive. *Id.* JP Morgan is entitled to summary judgment if it shows that Phillips was not harmed by retaliation. *Id.*

Phillips argues that her discharge was retaliatory because it occurred immediately after she returned from medical leave. Temporal proximity is not enough to establish a genuine issue of material fact under a direct discrimination theory. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004); *Haywood v. Lucent Tech. Inc.*, 323 F.3d 524, 531-32 (7th Cir. 2003)

("causal connection" required between plaintiff's discharge and taking FMLA leave under direct evidence theory).

Even if Phillips could show that her termination was retaliatory, JP Morgan provides a non-retaliatory reason for her termination. Phillips violated JP Morgan's attendance policy by missing three consecutive shifts without speaking to her supervisor. Phillips argues this is a pretextual reason for her discharge because she called and left messages for Acosta. Yet, even if Acosta received her voicemail messages, Phillips was still subject to termination because JP Morgan's policy expressly provided that voicemail is not acceptable notification. JP Morgan is entitled to summary judgment on Phillips' retaliation claim.

## CONCLUSION

JP Morgan's summary judgment motion is granted.

ENTER:

Suzanne B. Conlon
United States District Judge

April 30, 2007